Barry G. Felder
Richard J. Bernard
Alissa M. Nann
**FOLEY & LARDNER LLP**
90 Park Avenue
New York, New York 10016
T: (212) 682-7474
F: (212) 687-2329
E: bgfelder@foley.com
E: rbernard@foley.com
E. anann@foley.com

*Proposed counsel to Alrose King David LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ALROSE KING DAVID LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 16- 10536 |

## DECLARATION OF ALLEN ROSENBERG IN SUPPORT OF
## CHAPTER 11 PETITION AND REQUEST FOR FIRST DAY RELIEF

I, Allen Rosenberg, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am the Designated Officer and Managing Member of Alrose King David LLC

(the "Debtor"). I have served as Managing Member of the Debtor since approximately August of

2007. My current duties include oversight and management over all aspects of the Debtor's

financial matters. I am authorized by the Debtor to submit this Declaration.

2.      On March 4, 2016 (the "Petition Date"), the Debtor commenced a case under

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") by filing a voluntary

petition for relief with this Court.

3.      As the Managing Member of the Debtor, I am familiar with the Debtor's business operations and financial condition. In discharging my duties, I have reviewed the Debtor's books and records, and other information necessary to the restructuring sought to be effected by the Debtor. My conclusions as to the objectives to be achieved through this chapter 11 case are set forth at the end of this Declaration. As a result of my first-hand experience, and through my review of the Debtor's books and records and other information, I have formed opinions as to the necessity of obtaining the relief sought by the Debtor in its "first-day" motions and applications filed concurrently with this Declaration. The prosecution of these papers is necessary for the Debtor's reorganization, and to enable it to proceed effectively in this case. The Debtor would be adversely affected if unable to obtain the relief sought therein.

4.      I submit this Declaration in accordance with Local Rule 1007-2 and in support of the Debtor's petition for relief under chapter 11 of the Bankruptcy Code, first-day motions and applications. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my opinions based upon my experience and knowledge of the Debtor's operations and financial condition, or my consultation with the Debtor's professional advisors. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

5.      Part I of this Declaration describes the Debtor, its business, its history, its need for chapter 11 relief, and its debt and equity structure. Part II summarizes the Debtor's objectives in this chapter 11 case.

2

## I.     FACTUAL BACKGROUND

### A.     History of the Debtor

6.      The Debtor is a limited liability company formed under the laws of the State of

New York in or about May 2007.  The Debtor consists of two members: (1) Allen Rosenberg

with a 75% interest and (2) SG Broadway LLC with an approximate 25% interest.  Sol Green is

the sole member of SG Broadway LLC.

7.      The Debtor's principal place of business is 30 East 39th Street, New York, NY.

The Debtor does not have any employees, where it maintains certain books and records.

8.      The Debtor is the owner of real property, including the building, fixtures and

improvements thereon, located at 80 W. Broadway, Long Beach, New York (the "Property"),

otherwise known as the Allegria Hotel.  The Property is the Debtor's sole asset.

9.      The Debtor purchased the Property, which had been a nursing home, on August

13, 2007, with acquisition loans from Brooklyn Federal Savings Bank totaling approximately $24

million and secured by mortgages on the Property (the "Acquisition Loan").  Brooklyn Federal

Savings Bank extended an additional loan of $6.225 million, also secured by a mortgage on the

Property, in June 2009 (the "Building Loan").  Sol Green and I executed personal guarantees in

connection with both of the aforementioned Loans.

10.     Alrose Allegria, LLC ("Allegria"), an affiliate of the Debtor, leases the Property

from the Debtor.  At the Property, Allegria operates a luxury oceanfront hotel known as the

Allegria Hotel.  The Allegria Hotel is open year-round and has approximately 140 rooms and

suits, as well as six state-of-the art conference rooms and two 200+ seat ballrooms.  The Allegria

Hotel has an on-site restaurant and fitness center, and provides its guests with a multitude of

other amenities.  Currently, there is no written lease agreement between the Debtor and Allegria,

3

and Allegria does not pay "rent" to the Debtor. However, Allegria pays the real property taxes,

insurance, utilities (to the extent not obtained directly by Allegria) and the costs and expenses to

operate and maintain the Property.

11.     Starting in September 2009, before construction of the Allegria Hotel was

complete, Allegria began leasing the property from the Debtor pursuant to that certain Agreement

of Lease.

12.     In 2010, hurricane Irene caused significant damage to the Allegria Hotel.

Insurance did not cover the cost of the needed repairs.

13.     In August 2011, following actions by Brooklyn Federal Savings Bank, on its

secured debt, and other vendors against the Debtor to collect, the Debtor filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code in the Eastern District of New York

("EDNY"), Case No. 11-75361 (the "First Chapter 11 Case").

14.     Following a reorganization finalized in June 2012, the Allegria Hotel continued

operations with Allegria as the operating entity. As a result the First Chapter 11 Case, the

Agreement of Lease between the and Allegria was terminated; however, the Debtor's confirmed

plan of reorganization provides that Allegria "may, at the sole discretion of the Debtor, continue

to occupy the [Property] to operate its business." No new lease or operating agreement was

entered into by the Debtor and Allegria, and, since confirmation of its plan, the Debtor has

continued to permit Allegria to operate the Allegria Hotel.

15.     In October 2012, Hurricane Sandy caused extensive damage to the boardwalk

bordering the hotel's beach and to the hotel itself, flooding the Allegria Hotel and requiring a

complete renovation of the main floors. The Debtor and Allegria rebuilt and reopened the hotel

4

in 2013 at a cost exceeding $3 million, receiving little insurance coverage. The Allegria Hotel did not return to "normal" operations until 2014.

**B.      The Debtor's First Chapter 11 Case**

16.      On July 28, 2011, the Debtor filed the First Chapter 11 Case, to restructure the mortgages on the Property and debt to various contractors for goods and services provided to improve the Property.

17.      In addition to Brooklyn Federal Savings Bank as secured creditor, the Debtor's general unsecured creditors in the First Chapter 11 Case consisted primarily of the contractors and vendors who built and furnished the hotel at the Property and who filed mechanics' liens against the Property. After extensive negotiations, the creditors of the Debtor reached a resolution of claims and executed a term sheet.

18.      On March 23, 2012, the Debtor filed its Plan and its First Amended Disclosure Statement related to the Plan (the "AKD Plan" and "AKD Disclosure Statement"). See First Chapter 11 Case ECF 146 and 147.

19.      Pursuant to the AKD Plan, the notes executed in connection with the Acquisition Loan and the Building Loan were consolidated into a consolidated, amended and restated loan upon the terms and conditions as set forth in that certain Consolidated, Amended and Restated Promissory Note, dated as of June 14, 2012 (the "Note") in the principal amount of $24,000,000.00.

20.      By Order dated  June 18, 2012, the AKD Plan was  confirmed (the "Confirmation Order") [First Chapter 11 Case ECF 198].  On June 18, 2012, in accordance with the

5

Confirmation Order, Joseph S. Maniscalco, Esq. was appointed as the administrator of the AKD Plan (the "Plan Administrator").

21.     The effective date of the AKD Plan was June 18, 2012 (the "Effective Date"). See First Chapter 11 Case ECF 204.

22.     On March 18, 2014, EDNY issued a final decree and order closing the First Chapter 11 Case. See First Chapter 11 Case ECF 343.

23.     The AKD Plan provides for the establishment of a GUC Distribution Fund (as defined in the AKD Plan) and sets forth a schedule for the funding of the GUC Distribution Fund. See AKD Plan at 11 and 20, § 5.1(e). Under the AKD Plan, a total of $2,000,000.00 was to be paid into the GUC Distribution Fund by the Debtor, the Reorganized Debtor (as defined in the AKD Plan), Allegria and myself.[1] See id. Pursuant to a Stipulation and Order dated February 24, 2014, the payment schedule set forth in the AKD Plan was modified to extend certain of the due dates and deadlines. See First Chapter 11 Case ECF 342. Additional extensions were granted by the Plan Administrator at my request.

24.     On October 20, 2015, written notice was provided by the Plan Administrator to the Debtor and Allegria of the default under the AKD Plan (the "Default Notice"). To date, the Debtor failed to cure its default under the AKD Plan.

25.     On February 10, 2016, the Plan Administrator filed his motion to reopen and convert to chapter 7 the First Chapter 11 Case (the "Motion to Reopen"). See First Chapter 11 Case ECF 346.

---

[1] Pursuant to the AKD Plan, Allegria is jointly and severally liable for any obligation required to be paid by the AKD Debtor. See AKD Plan at 22, § 6.3. On December 28, 2015, the Plan Administrator timely filed a general unsecured claim in the amount of not less than $190,838.00 against Allegria's chapter 11 estate, which claim was assigned claim number 33-1.

6

26. According to the Motion to Reopen, the Plan Administrator represented that the sum of $1,809,162 was paid into the GUC Distribution Fund, leaving a balance owed in the amount of $190,838.00 plus attorney's fees and costs.

27. The Motion to Reopen is currently scheduled to be heard on March 23, 2016 before Judge Trust in EDNY.[2]

C. **Stabilis, the Foreclosure Action, and Claims Against the Property**

28. On May 11, 2015, Stabilis Fund IV, LP ("Stabilis") purchased the Note from Investors Bank (successor by merger to Brooklyn Federal Savings Bank). Stabilis asserts that it is the true and lawful holder of the Note and the corresponding mortgages against the Property in connection with the Acquisition and Building Loans. The Debtor does not know what amount Stabilis paid for the Note.

29. The term of the Note lapsed on June 19, 2015, at which time the outstanding balance of the principal sum, together with interest and other amounts became due and payable.

30. On December 10, 2015, Stabilis initiated a foreclosure proceeding against the Debtor and others in New York Supreme Court to foreclosure on the Property (the "Foreclosure Proceeding"). The Foreclosure Proceeding was subsequently removed to the United States District Court for the Eastern District of New York and is pending under Case No. 16-cv-588.

31. By its amended complaint filed in the Foreclosure Proceeding, Stabilis asserts that it is owed approximately $31.7 million on the Note, plus interest fees and costs relating to the

---

[2] The First Chapter 11 case was assigned to and fully administered by and before Judge Eisenberg. On March 28, 2014, the First Chapter 11 Case was reassigned to Judge Craig. The Motion to Reopen was reassigned *sua sponte* to Judge Trust by Order entered on February 11, 2016. See First Chapter 11 Case ECF 347.

Foreclosure Proceeding. The Debtor's counsel conferred with Stabilis prior to the

commencement of this chapter 11 case, and Stabilis was supportive of same.

32.    Several taxing authorities, including the Internal Revenue Service ("IRS"), New

York State Department of Taxation and Finance ("DTF"), Nassau County and the City of Long

Beach (many of which are named as defendants in the Foreclosure Proceeding), have asserted tax

liens against the Property. The Debtor believes that certain of these tax liens were discharged

pursuant to the confirmation of the AKD Plan in the First Chapter 11 Case and/or are partially

duplicative of tax claims that have been asserted against Allegria in its chapter 11 case.

D.    **Allegria's Chapter 11 Case**

33.    In the course of operating the Allegria Hotel, Allegria incurred certain tax

liabilities beginning in 2010 that it was unable to pay in full when due. In order to maintain hotel

operations, continue to generate revenue and to work out the tax liability in an orderly manner,

on July 2, 2015, Allegria filed a voluntary petition for relief under chapter 11 of the Bankruptcy

Code in the United States Bankruptcy Court for the Southern District of New York, case no. 15-

11760 (the "Allegria Chapter 11 Case").

34.    The major creditor constituents in the Allegria Chapter 11 Case are the federal,

state and local taxing authorities, all of which have asserted substantial tax claims (secured and

unsecured) against Allegria. To date, attempts to settle or otherwise resolve the claims have

proven unsuccessful.

35.    By Order dated February 5, 2016, this Court directed the appointment of a chapter

11 trustee in the Allegria Chapter 11 Case. By Order dated February 10, 2016, this Court

approved the appointment of Kenneth P. Silverman as chapter 11 trustee in the Allegria Chapter

11 Case (the "Allegria Trustee"). The Allegria Trustee has been consulted in connection with, and supports the commencement of the Debtor's chapter 11 case.

## II.   NEED FOR CHAPTER 11 RELIEF

36.     Given the difficulties in opening the Allegria Hotel, and the intervening shutdowns caused by major storms, Allegria - the sole source of funds for the Debtor - has been unable to operate the Allegria Hotel under normal conditions for a single calendar year, which has significantly impacted both the Debtor's and Allegria's revenues and cash flow and particularly the ability to make the final payments to the Plan Administrator and to pay taxes. These problems precipitated the filings of both the First Chapter 11 Case and the Allegria Chapter 11 Case.

37.     The operation of the Allegria Hotel is poised for success and has great upside potential. To achieve this success, however, the Debtor (and Allegria) must deal with Stabilis, the taxing authorities, and the Plan Administrator collectively and in an orderly manner without threat of business disruption until sale of the Property and /or a plan of reorganization or liquidation can be negotiated. Chapter 11 provides the Debtor with such an opportunity.

## III.   DEBT AND EQUITY STRUCTURE

38.     As described above, Stabilis holds the Note in the face amount of $24 million, and asserts a secured claim of approximately $31.7 million against the Debtor.

39.     The taxing authorities assert claims against the Debtor in the following amounts, [3] some of which may be secured and/or entitled to priority:

---

[3] The Debtor generally disputes these amounts and reserves all rights to object to any and all claims.

9

IRS: asserts in the Foreclosure Proceding that it has filed federal tax liens against the Debtor, as nominee or alter ego of Allegria, in an amount of $6,488,198.89.

DTF: as of the date of this Declaration, it is unknown if DTF will assert a claim against the Debtor. DTF has filed claims against Allegria for over $15 million in sales and withholding taxes.

Nassau County: $261,088.13 asserted as secured against the Property in the Allegria Chapter 11 Case. This amount should be reduced to reflect settlement payments that have been made from non-debtor sources since the Petition Date.[4] By the Debtor's calculations, $119,101.66 remains due and owing under the Tax Settlement. There may be additional tax amounts that have accrued.

City of Long Beach: $455,641.08 asserted as secured liens against the Property.

40. In addition, the Plan Administrator asserts an unsecured claim for approximately $190,000.

41. The Debtor is owned 75% by Allen Rosenberg and approximately 25% by SG Broadway.

## IV.    DEBTOR'S OBJECTIVES IN THIS CHAPTER 11 CASE

42. The Debtor requires relief under chapter 11 to enable it to attempt to work collectively with the Allegria Trustee and Stabilis to negotiate and implement a plan to resolve the liabilities of the Debtor and Allegria, without threat of business interruption. A sale of the

---

[4] Allegria is in arrears for certain hotel occupancy taxes ("Hotel Taxes") owed to Nassau County, New York for tax years 2010 through 2014. In May of 2015, the Debtor, Allegria and Nassau County entered into a Stipulation of Settlement resolving various actions related to the Hotel Taxes for a total of $907,481 (the "Tax Settlement") (which includes the waiver of certain penalties and interest by Nassau County). Pursuant to the Tax Settlement, the Debtor, which is not an obligor for Hotel Taxes, agreed to assign certain anticipated tax returns to Nassau County, which are estimated to be approximately $770,000, and the Debtor agreed to make eight (8) scheduled payments of $20,500 per month from June 1, 2015 through and including January 4, 2016, with two (2) additional payments thereafter in an amount to be determined by the parties, based on the actual amount of the anticipated tax refund. As of the date of this Declaration, Allegria has defaulted on the Tax Settlement.

Property and all assets of Allegria as a going concern, whether through a plan or section 363 of the Bankruptcy Code, is currently being discussed by the main constituencies in both chapter 11 cases. In the event that the Debtor is unable to reach a consensual resolution with creditor constituencies, including the taxing authorities, to the terms of some other plan of reorganization, exiting bankruptcy through a sale process remains a viable alternative.

43.     The Debtor believes that the Property has value and the Allegria Hotel is a valuable core business, which can emerge from chapter 11 (either through a sale or a joint plan with Allegria) with a viable, successful business.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  March 4, 2016

                                        _/s/ Allen Rosenberg_
                                        Allen Rosenberg